STATE of Maine

v.

**Matthew J. WILSON.**

Supreme Judicial Court of Maine.

Argued Sept. 20, 1995.

Decided Jan. 17, 1996.

Andrew Ketterer, Charles K. Leadbetter (orally), Assistant Attorney General, Augusta, for the State.

William J. Wingert (orally), Salem, MA, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Defendant Matthew Wilson appeals from a judgment of conviction and a life sentence imposed on him by the Superior Court (Aroostook County, *Pierson, J.*). Wilson contends that the court misapplied sentencing principles when it found that his criminal conduct constituted extreme cruelty. Wilson further contends that the court violated his due process rights by considering sentence recommendations from members of the public. We affirm both the judgment of conviction[1] and the life sentence.

In October 1993, Matthew Wilson[2] lived in Monticello with his wife Cynthia Wilson and their three children, one of whom was eleven year old Jennifer Smith. On the evening of October 5, 1993, Jennifer's parents reported her missing to the local police, who then forwarded the report to the State police. After a two-day search, Jennifer's body was found, bound and gagged, beneath some branches, on a dirt road that runs along an abandoned railway bed, about one-quarter to one-half a mile from the family's home.

On October 8, 1993, an autopsy was performed on Jennifer's body. Deputy Chief Medical Examiner Kristen G. Sweeney determined the cause of death to be "asphyxia due to ligature, strangulation, suffocation and as-

---

1. Although his written and oral arguments focused solely on the appeal of his life sentence, Wilson also filed a notice of appeal from his conviction.

2. The defendant was formerly known as James Smith. At some time prior to the events of this case, he changed his name legally.

piration of gastric contents." The ligature applied to Jennifer's throat was a choker chain of the type frequently used to train dogs. In addition to the cause of death, the medical examiner reported the following facts: thick layers of electrical tape and duct tape had been wrapped around Jennifer's head, mouth, underneath her chin and around her upper neck;[3] there was a green handkerchief inside her mouth; her hands were bound behind her with leather strips, layers of electrical and duct tape, and plastic wire ties around the duct tape; her t-shirt was torn; her underwear was torn and rolled down; there were large amounts of dirt and debris on her buttocks, legs, knees and the soles of her feet; there was soil both inside and outside her slacks and underwear; there was a tear to Jennifer's "very dilated" vagina, and there were lacerations of her "very dilated" anus; there were several contusions to her groin and abdominal area; and there were numerous abrasions all over her body. The injuries to Jennifer's vagina and anus led the medical examiner to conclude that she had been sexually assaulted.

An Aroostook County grand jury returned an indictment charging that Wilson did "intentionally or knowingly cause the death of Jennifer Smith, all in violation of 17–A M.R.S.A. § 201(1)(A) (1983)," or, alternatively, that he was responsible for the "depraved indifference" murder of Jennifer Smith, in violation of 17–A M.R.S.A. § 201(1)(B) (1983). Wilson was arraigned on the charges and pleaded not guilty.

The grand jury subsequently returned a second indictment against Wilson charging him with two counts of gross sexual assault, in violation of 17–A M.R.S.A. §§ 253(1)(A) and (B) (Supp.1992). The charges of gross sexual assault were joined with the murder charges for the trial.

Pursuant to a plea agreement, Wilson changed his plea of not guilty to guilty as to the "intentional or knowing" murder of Jennifer Smith; all other charges against him

were dismissed. The court continued the matter for sentencing, and ordered that a pre-sentence investigation be conducted and a report prepared pursuant to M.R.Crim.P. 32(c). A "Victim Impact Statement" was filed with the pre-sentence report, containing statements from twenty-one members of the Monticello community, including Jennifer Smith's teachers, neighbors and a community minister.

On December 7, 1994, the court imposed a life sentence on Wilson. Wilson filed a notice of appeal from the criminal judgment as well as an application to allow an appeal of sentence. The Sentence Review Panel granted Wilson's application.

### Sentence Appeal

■■■ We review the propriety of criminal sentences for misapplication of principle. *State v. Corbett*, 618 A.2d 222, 223 (Me.1992). The guiding principle for determining the basic sentence is the nature and seriousness of the particular crime. *Corbett*, at 224. This principle requires the sentencing judge to place a defendant's conduct along a continuum for the type of criminal conduct involved in order to "determine which act justifies the imposition of the most extreme punishment." *Id.* (quoting *State v. St. Pierre*, 584 A.2d 618, 621 (Me.1990)).

The most extreme punishment in Maine for "intentional or knowing" murder is life imprisonment. 17–A M.R.S.A. § 1251 (Supp. 1994). The minimum punishment for that crime is twenty-five years in prison. *Id.* Within these limits, trial courts have considerable discretion in determining what sentence to impose. In *State v. Shortsleeves*, 580 A.2d 145 (Me.1990), we provided trial courts with guidelines to assist them in placing murderous behavior along a continuum.[4] Specifically, we identified seven aggravating circumstances which, either alone or together, justify a life sentence for the crime of "intentional or knowing" murder. *Shortsleeves*, at 149–150. One of those circum-

---

3. The layers of tape were so thick that when they were cut off by the medical examiner during the *autopsy*, they stood freely and resembled a hockey goalie's mask.

4. The guidelines discussed in *State v. Shortsleeves* were first set forth in *State v. Anderson and Sabatino*, Nos. 78–37, 78–40 (Me.App.Div. June 30, 1980), an unpublished opinion of the Appellate Division.

stances is "murder accompanied by torture, sexual abuse, or other extreme cruelty inflicted on the victim." *Id.* at 150.

■ In the instant case, the court concluded that Wilson's murder of Jennifer Smith was accompanied by extreme cruelty. Wilson argues, however, that his conduct falls far short of the viciousness required for a finding of extreme cruelty and that the court accordingly misapplied sentencing principles. We disagree.

The court focused on the totality of the circumstances of Jennifer's murder:

> The victim in this matter was your own daughter. The physical evidence in this matter indicated that it was indeed a matter of extreme cruelty that involved the killing with a choker chain to a victim who was bound by tape and gagged by tape. The evidence suggested to the [c]ourt revealed a killing that involved sexual abuse with a presentence report quoting or describing a tear to a very dilated vagina and lacerations to a very dilated anus, panties that were torn and rolled down, and abundant debris and dirt on the buttocks, legs, within the pants, and knees, and the soles of the feet of the victim. It's difficult for anybody, any human, to imagine a more gruesome circumstance, a more cruel circumstance.

The court's finding of extreme cruelty was based, in part, on the cumulative horror of the circumstances surrounding Jennifer's murder. These circumstances included sexual abuse and torture, each of which is a form of extreme cruelty that would separately support the imposition of a life sentence. Jennifer was raped prior to her death. She was tortured by being bound and gagged and subjected to further physical abuse. Her body was covered with abrasions and contusions. She was conscious for some portion of this ordeal. Because this was a murder accompanied by *all three* aggravating factors—sexual abuse, torture, and extreme cruelty—any one of which justifies a life sentence, the

sentencing court did not misapply sentencing principles when it sentenced Wilson to life in prison.

### Letters from Community Members

■ Prior to sentencing the defendant, the court received a report from the victim-witness advocate that contained statements from twenty-one members of the Monticello community, or about 2% of the population of Monticello, which has a population of approximately 1000. All of the individuals who authored the statements knew Jennifer personally. They included Jennifer's teachers, neighbors and a community minister.

The defendant contends that the statements of these community members amounted to a de facto sentencing poll that was improperly considered by the court.[5] In *State v. Samson,* 388 A.2d 60, 66 (Me.1978), we held that sentencing recommendations and exhortations contained in a court-ordered poll of the community conducted by a probation and parole officer preparing a presentence investigation were "impermissible as carrying within themselves an inherent potential of coercive influence upon the sentencing judge."

The court has broad discretion in what information it considers when sentencing. *State v. Fleming,* 644 A.2d 1034, 1036 (Me. 1994); M.R.Crim.P. 32(c). Due process limits this discretion by requiring that the information be factually reliable. *Id.* (citing *State v. Dumont,* 507 A.2d 164, 166–67 (Me.1986)). The court has an obligation to impose sentences that do not diminish the gravity of offenses "with reference to the factor, among others, of the age of the victim." 17–A M.R.S.A. § 1151(8)(A) (1983 & Supp.1994).

In this case, the opinions offered by individuals about the appropriate sentence were unsolicited by the court, and hence there is no suggestion, of concern to us in *Samson,* that the court was prepared to defer to expressions of community sentiment solicited by the court. Furthermore, the sentence

---

**5.** The following are examples of the sentence exhortations contained in the statements submitted to the court:

"I feel Matthew Wilson should receive the maximum sentence for his crimes against Jennifer Smith"—teacher; "do not allow this man out of prison for a long time"—minister; and "I myself feel he best be sent far away in a cell for [a] very long time"—neighbor.

exhortations were contained within factually reliable statements describing the impact of Jennifer's death on members of the Monticello community who knew her personally.[6] The statements of widespread grief and outrage are evidence of the harm caused by the defendant to these members of the community, and they are relevant to the court's responsibility to impose a sentence that does not diminish the gravity of the offense, *see* 17–A M.R.S.A. § 1151(8)(A), and that individualizes the sentence justly, *see* 17–A M.R.S.A. § 1151(6) (1983). *See also Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 735 (1991) (holding that it is constitutionally permissible to bring evidence of the specific harm caused by a defendant to the attention of the sentencing court because such evidence is relevant to the issue of a defendant's moral culpability).

The entry is:

Judgment affirmed. Sentence affirmed.

All concurring.

---

6. Wilson does not challenge the factual reliability of the statements, and there is no indication that the authors' descriptions of the impact of Jennifer's death on them are not factually accurate.