MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 71
Docket:      SRP-12-350
Argued:      May 16, 2013
Decided:     July 30, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, SILVER, <u>MEAD</u>, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

BRIAN NICHOLS

MEAD, J.

[¶1]  Brian Nichols appeals from the sentence imposed on him following a judgment of conviction entered in the trial court (*Clifford, J.*) after he pleaded guilty to the intentional or knowing murder of his wife.  *See* 17-A M.R.S. § 201(1)(A) (2012).  Nichols challenges the sentencing court's application of the first step of the sentencing analysis required by 17-A M.R.S. § 1252-C(1) (2012), arguing that the court failed to (1) adequately compare his conduct to prior comparable cases in setting the basic period of incarceration, and (2) accurately place his conduct on a continuum of seriousness of possible ways that the crime of murder could be committed.  He also argues that the unavailability of basic sentence information implicates all criminal defendants' equal protection and due

2

process rights. We affirm Nichols's sentence and reject his constitutional arguments.

## I. BACKGROUND

[¶2] The following facts are established in the record. In May 2010, Brian Nichols murdered his wife, Jane Tetreault, by shooting her in the head with a .30-30 rifle while she lay in the couple's bed. After shooting his wife, Nichols called the police to report what he had done. The couple's older son, then sixteen years old, was in a nearby room during the murder and heard his mother scream. When he heard the police sirens he got up, discovered his mother's body, and "saw blood everywhere."

[¶3] Nichols had a long history of domestic violence toward Tetreault. For at least the year or two before the killing, Nichols "perseverated" on his erroneous belief that Tetreault was having an affair. He grew increasingly suspicious in the weeks and months before her murder, causing frequent arguments for the couple, including one in which Nichols broke their television. Tetreault, fearing that Nichols would kill her, slept at her office and in her older son's room with the door locked. Concerned about Nichols' increasingly erratic behavior, Tetreault made plans to commit him involuntarily the night of her murder, but for unknown reasons did not follow through with her plan.

[¶4]   In the days prior to Tetreault's murder, Nichols asked the couple's younger son, then fifteen years old, whether he would mind if Nichols killed his mother.  Nichols also repaired a broken .30-30 rifle, which had been stored in his basement.  He skipped work and had trouble sleeping.

[¶5]   The day of the murder, Nichols smoked more marijuana than usual and went to work.  That evening, Nichols dropped his younger son off at a friend's house while he unsuccessfully searched for Tetreault.  He later returned to the house where his son was staying and had a beer with the friend's father.  Afterward, he searched for Tetreault again, driving by her mother's house and her workplaces, eventually finding her at an office where she worked.  After speaking with Tetreault, Nichols left the office, drove by the house where his son was staying, and returned home, where he found Tetreault's car.  That night, Nichols murdered her in their home.

[¶6]   Nichols was indicted for his wife's murder pursuant to 17-A M.R.S. § 201(1)(A).  He entered a plea of not guilty, later changing his plea to not criminally responsible by reason of insanity.  Nichols ultimately pleaded guilty pursuant to an agreement with the State that it would not seek a sentence greater than forty-two years' imprisonment.

[¶7]   The State and Nichols each submitted memoranda in aid of sentencing.  The State's memorandum identified the facts and basic sentences in four Maine

4

cases involving domestic violence homicides. In the first, where a defendant severely beat his girlfriend and left her to die, the court set his basic sentence at forty-five years because of the unprovoked, depraved, and brutal nature of the crime. In the second, where a defendant strangled and beat his estranged wife with a board, the court set his basic sentence at thirty-five to forty years because of the crime's brutality, rage, and victim suffering. In the third, where a defendant repeatedly stabbed his girlfriend after she broke up with him, the court set the basic sentence at fifty to sixty years. Finally, where a defendant repeatedly stabbed his wife after learning of an affair, the court set the basic sentence at forty to fifty years.

[¶8] At Nichols's sentencing hearing, the State argued for a basic sentence of thirty-five to forty years, identifying for the court the objective facts of the murder relevant to the court's task of setting a basic sentence: Nichols used a firearm, he shot Tetreault at close range in or near her mouth, the murder was premeditated, it was born of jealousy and rage, and it was committed in close proximity to the couple's son.

[¶9] Nichols argued for a basic sentence of thirty to thirty-five years. He attached an extensive list of final murder sentences in Maine cases to his sentencing memorandum, identifying the basic sentences imposed in two of them. In the first, the court set the basic sentence at thirty years when a defendant beat

the victim severely and killed her with a blow to the head with a hammer. In the second, the court set the basic sentence at thirty years when a defendant strangled his girlfriend after an argument. Despite an extensive search for basic sentences that included talking with other defense attorneys and looking at files in three different courthouses, Nichols asserted that he was unable to obtain data about other defendants' basic sentences in comparable cases.

[¶10] The sentencing court correctly noted that the determination of a basic term of imprisonment, as required by the first step of the statutory sentencing analysis, 17-A M.R.S. § 1252-C(1), involves considering the particular nature and seriousness of the offense as committed by the offender. The court noted that the sentencing memoranda submitted by the parties, with their descriptions of other murder sentences, were "very helpful." The court then cited the facts of the murder that it considered in determining the basic period of Nichols's incarceration: (1) Nichols used a firearm to directly cause Tetreault's death; (2) her death was violent and premeditated; (3) one of the couple's sons was in the home; (4) her murder was an act of domestic violence; and (5) although Tetreault did not have any prolonged suffering in her death, "she was put in great fear immediately prior to . . . the homicide." The court set Nichols's basic sentence at thirty-five to forty years. The court next considered, pursuant to step two of the sentencing analysis, 17-A M.R.S. § 1252-C(2) (2012), the aggravating and mitigating

6

circumstances applicable to Nichols, ultimately imposing a final sentence of forty years in prison.

[¶11]  Nichols filed a motion for findings of fact, which the court granted. In its order, the court restated the standard for determining the basic period of incarceration.  It also explained that it "generally accepted the position of the State, for the reasons advanced by the State, that the basic period of incarceration was thirty-five to forty years," and cited the facts of the murder it considered, including that it was "planned and premeditated, committed with a rifle in the near presence of a son, . . . [and] was the culmination of a long history of domestic violence abuse . . . ."  Pursuant to M.R. App. P. 20 and 15 M.R.S. § 2151 (2012), we granted Nichols leave to appeal the forty-year sentence imposed.

## II.  DISCUSSION

[¶12]  We first articulated the three-step process that a sentencing court is required to follow in *State v. Hewey,* 622 A.2d 1151 (Me. 1993).  The sentencing analysis discussed in *Hewey* was later codified by the Legislature.  P.L. 1995, ch. 69, § 1 (effective Sept. 29, 1995) (codified at 17-A M.R.S. § 1252-C (2012)). The statute provides that

> the court shall employ the following 3-step process:
>
> 1.  The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender.

2. The court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

3. The court shall finally determine what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension.

17-A M.R.S. § 1252-C. In sentencing a defendant convicted of murder, the third step does not apply. *See* 17-A M.R.S. § 1201(1)(A) (2012); *State v. Waterman*, 2010 ME 45, ¶ 25 n.1, 995 A.2d 243. In murder cases, the court must first determine a basic period of incarceration and then evaluate the mitigating and aggravating factors to determine the final sentence. Nichols's arguments focus solely on the first step, the court's determination of his basic sentence "by considering the particular nature and seriousness of the offense as committed by the offender." *See* 17-A M.R.S. § 1252-C(1).

[¶13] We review the sentencing court's determination of the basic period of incarceration for misapplication of sentencing principles. *State v. Ardolino*, 1997 ME 141, ¶ 24, 697 A.2d 73. "[A] basic sentence will survive appellate scrutiny unless it appears to err in principle." *State v. Cookson*, 2003 ME 136, ¶ 41, 837 A.2d 101 (quotation marks omitted). We also review the basic term for

8

an abuse of the court's sentencing power. *State v. Reese*, 2010 ME 30, ¶ 23, 991 A.2d 806.

[¶14] The first step of the statutory sentencing process requires that the court review the facts and nature of the crime and the conduct in committing the crime in as objective a manner as possible, without regard to the offender's individual circumstances. *See, e.g., State v. Hamel*, 2013 ME 16, ¶ 6, 60 A.3d 783; *State v. Stanislaw* (*Stanislaw I*), 2011 ME 67, ¶ 9, 21 A.3d 91. At the same time, the court must take into account the sometimes-competing goals of sentencing that include deterrence, restraint in the interest of public safety, minimization of correctional experience that may promote future criminality, and the elimination of inequalities in sentencing that are unrelated to criminological goals. 17-A M.R.S. § 1151 (2012); *State v. Koehler*, 2012 ME 93, ¶ 33, 46 A.3d 1134.

A. Comparison with Precedent

[¶15] Nichols first contends that the sentencing court was required to expressly compare his conduct to precedent and that it erred by failing to do so. We disagree, and take this opportunity to clarify the statutory sentencing process.

[¶16] We have previously held that it is permissible to compare the facts of a defendant's case to precedent. *See, e.g., State v. Berube*, 1997 ME 165, ¶¶ 5, 8, & n.3, 698 A.2d 509 (affirming the sentencing court's implicit determination of the

basic sentence because, among other reasons, it relied on sentencing data compiled by a Superior Court justice).

[¶17]   However, the language discussing the first step of the sentencing process in some of our opinions may have been misperceived as requiring this comparison as a mandatory sentencing element.  *See Cookson*, 2003 ME 136, ¶ 38, 837 A.2d 101 ("The first step determines the basic period of incarceration by examining the crime, the defendant's conduct in committing it, *and by looking at other sentences for similar offenses*." (emphasis added)); *Stanislaw I*, 2011 ME 67, ¶ 8, 21 A.3d 91 (same); *State v. Dalli*, 2010 ME 113, ¶ 6, 8 A.3d 632 (same); *State v. Robbins*, 2010 ME 62, ¶ 9, 999 A.2d 936 (same); *Waterman*, 2010 ME 45, ¶ 43, 995 A.2d 243 (same).

[¶18]   Notwithstanding the possible interpretation of these cases to require the sentencing court to make specific findings regarding precedent, we expressly held in *State v. Reese* that the sentencing court was "*not* require[d] . . . to make factual comparisons using precedent, although there may be times when appropriate case comparisons would advance the sentencing principle of eliminating significant unjustified inequalities in sentences."  2010 ME 30, ¶ 28, 991 A.2d 806 (emphasis added) (citation omitted).  Similarly, in *State v. Stanislaw* (*Stanislaw II*), we explained that in step one of the sentencing process "[t]he court examines the crime, the defendant's conduct in committing it, and, *at its*

*discretion*, other sentences for similar offenses." 2013 ME 43, ¶ 21, 65 A.3d 1242 (emphasis added). *See also State v. Basu*, 2005 ME 74, ¶ 23, 875 A.2d 686 (noting that the sentencing court "*may* consider" sentences of other offenders for similar conduct (emphasis added)).

[¶19] Nichols cites *Stanislaw I* for the proposition that the sentencing court must expressly reference precedent. In *Stanislaw I*, we vacated Stanislaw's sentence because the sentencing court at step one improperly considered facts relating to the impact of Stanislaw's crimes on his victims and the limited possibility of his rehabilitation. 2011 ME 67, ¶¶ 11, 16, 21 A.3d 91. We concluded that "[t]he record demonstrates that the court did not focus on the objective nature of Stanislaw's conduct in the first step of its analysis; nor did the court refer in any way to sentences imposed for similar offenses," and noted that the State had presented four comparable sentences for the court to consider. *Id.* ¶ 11 & n.8. Reading *Stanislaw I* in light of our pronouncements in *Reese*, *Basu*, and *Stanislaw II*, that consideration of comparable sentences is at the discretion of the sentencing court, we do not find support in *Stanislaw I*, as Nichols contends, that the court is required to make factual findings on precedent.

[¶20] Nichols's arguments reflect a popular, but mistaken, belief that the statute requires the court to consider comparable sentences as part of the first step of the statutory sentencing process established in 17-A M.R.S. § 1252-C(1). It

does not.  While it is permissible for the sentencing court to consider comparable sentences at the first step if appropriate, neither the statute nor our case law mandate it.

[¶21]  There is an inherent difficulty in collecting, compiling, and comparing cases involving identical charges but vastly differing facts and surrounding circumstances.  A useful database for such information would need to include an accurate and complete description of the operative facts and the judge's pronouncement of the basic period of incarceration.  We have previously recognized the difficulty in obtaining sentencing data.  *See, e.g.*, *Stanislaw I*, 2011 ME 67, ¶ 8 n.7, 21 A.3d 91 ("[B]ecause of the multiple variables in conduct and process that may impact a particular sentence, the Judicial Branch does not have the technological capacity to maintain the sentencing statistics that would support th[e] endeavor" to eliminate all inequalities in sentencing); *State v. Sweet*, 2000 ME 14, ¶ 37 n.9, 745 A.2d 368 (Calkins, J., dissenting) ("Except for a case by case search in each of the Superior Court clerks' offices, there is no way to find out what sentences have been imposed."); *Berube*, 1997 ME 165, ¶ 5 n.3, 698 A.2d 509 (noting the limitation of the data collected on final sentences in manslaughter cases, including the lack of information on the seriousness of the criminal conduct, aggravating and mitigating factors, or whether the sentence was

the result of a plea). The Judicial Branch currently has no ability to capture this type of data in a database, although it may in the future.

[¶22] Despite the fact that no central repository for sentencing data currently exists, Nichols's attorneys undertook extraordinary measures in their attempts to track down cases that might provide comparable sentences, and we commend them for their efforts. The sentencing court had the benefit of sentencing memoranda, including comparable sentences, from both Nichols and the State, and commented on how they were helpful in determining Nichols's basic sentence. A "court has wide discretion in determining the sources and types of information to consider when imposing a sentence." *Reese*, 2010 ME 30, ¶ 28, 991 A.2d 806. There was no misapplication of principle in setting Nichols's basic sentence.

B. Constitutional Arguments

[¶23] Nichols contends that the absence of information regarding other defendants' basic sentences violates all criminal defendants' equal protection and due process rights because the unavailability of data prevents defendants from presenting an adequate sentencing argument. We review his constitutional arguments for obvious error because he first raised them on appeal. *See State v. Burdick*, 2001 ME 143, ¶ 13, 782 A.2d 319; *see also State v. Tayman*, 2008 ME 177, ¶ 23, 960 A.2d 1151. Obvious error occurs when there is "(1) an

error, (2) that is plain, and (3) that affects substantial rights." *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147. If these conditions are met, we must "also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings" before we vacate a judgment on the basis of the error. *Id.*

[¶24] Concerning his claim of equal protection, Nichols has not demonstrated that other defendants sentenced for murder are "similarly situated." *See Doe I v. Williams*, 2013 ME 24, ¶ 53, 61 A.3d 718 (quotation marks omitted). Nor has Nichols demonstrated that similarly situated persons have been treated differently. *See id.* Given the current technological limitations of the Judicial Branch, prosecutors, and the Bar, any defendant would have the same difficulty as Nichols in obtaining information concerning basic sentences.[1]

[¶25] Because an analysis of comparable precedent is not required by section 1252-C(1), Nichols has also failed to establish a procedural due process violation. For these reasons, there is no plain error affecting substantial rights. *See Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

---

[1] To the extent that Nichols argues that the lack of data prevents equality in sentencing, 17-A M.R.S. § 1151(5) (2012), we are not persuaded that his sentence must be vacated because preventing sentencing inequality is not the only objective of sentencing. *See State v. Reese*, 2010 ME 30, ¶ 18, 991 A.2d 806 ("The court need not address all of these factors in any given sentence and it may address other factors."); *State v. Hamel*, 2013 ME 16, ¶ 8, 60 A.3d 783 ("[T]he selection for appropriate emphasis among these disparate purposes rests in the discretion of the court." (quotation marks omitted)).

14

C.    Continuum of Seriousness

[¶26]  Lastly, Nichols contends that the court failed to accurately place his conduct on a continuum of seriousness against all possible means of committing murder.  In considering the objective facts of the offense, a sentencing court may compare the crime committed to all the possible means of committing that offense by measuring the defendant's conduct on a "scale" or "continuum" of seriousness. *See, e.g., Stanislaw I,* 2011 ME 67, ¶ 8, 21 A.3d 91 (quotation marks omitted); *Basu,* 2005 ME 74, ¶ 23, 875 A.2d 686; *Berube,* 1997 ME 165, ¶ 3, 698 A.2d 509. The continuum of seriousness is obviously not a tangible line, where sentencing courts can precisely pinpoint where the murder falls.  Rather, the continuum of seriousness is a concept aimed at identifying certain objective facts that raise or lower the seriousness of the crime.  Accordingly, we have held that

> the sentencing court is not required to elucidate all the possible means by which the defendant's crime may be committed, find which method of commission is worse than the defendant's or which method is the worst possible way of committing the crime, and then assign the basic sentence according to where the defendant's conduct falls on that spectrum.

*State v. Schofield,* 2006 ME 101, ¶ 11, 904 A.2d 409.  This is true whether a defendant's actions are "among the most serious ways in which the crime might be committed," *see, e.g., State v. Holland,* 2012 ME 2, ¶ 40, 34 A.3d 1130 (affirming the imposition of a basic sentence of life imprisonment), or involved less serious

ways, *see, e.g.*, *State v. Cobb*, 2006 ME 43, ¶¶ 11, 26, 895 A.2d 972 (affirming the imposition of a basic sentence of twenty years).

[¶27] In murder cases, the factors articulated in *State v. Shortsleeves*, 580 A.2d 145, 149-50 (Me. 1990), such as premeditation, extreme cruelty, and multiple deaths, provide "guidelines to assist [sentencing courts] in placing murderous behavior along a continuum." *State v. Wilson*, 669 A.2d 766, 768 (Me. 1996). The court may also consider "the force and duration of the crime, and the defendant's motive." *Cookson*, 2003 ME 136, ¶ 38, 837 A.2d 101 (citation omitted). The proximity of children to the crime is similarly relevant and may raise the level of seriousness of a defendant's conduct. *Waterman*, 2010 ME 45, ¶ 46, 995 A.2d 243. "The [sentencing] court has broad discretion in what information it considers" as long as it is "factually reliable." *Wilson*, 669 A.2d at 769.

[¶28] Here, the court described appropriate factors concerning Tetreault's murder that it considered in determining Nichols's basic sentence: (1) the murder was planned and premeditated; (2) it was committed with a firearm; (3) it occurred near the couple's son; (4) it was an act of domestic violence; and (5) although Tetreault did not have any prolonged physical suffering, she was "put in great fear immediately prior to" her death. Because the murder was premeditated and

occurred in close proximity to the couple's son, the seriousness of the murder was greater in comparison to other ways it could have been committed.

[¶29]  Nichols contends that the court erred in considering at step one the fact that the murder was a culmination of Nichols's domestic violence against Tetreault.  He argues that the factor of domestic violence should be considered in the second step of the statutory sentencing process, like a defendant's criminal history.  We disagree.  The fact that Nichols murdered his wife as an act of domestic violence is an objective factor properly considered in the first step of the sentencing analysis.  *See Reese*, 2010 ME 30, ¶ 30, 991 A.2d 806 (considering that the crime "occurred within the context of a violent relationship" in evaluating the sentencing court's determination of the basic sentence); *Cookson*, 2003 ME 136, ¶¶ 39, 41, 837 A.2d 101 (finding no error in the sentencing court's determination of the basic sentence when it considered the fact that the "murder was a crime of domestic violence").

[¶30]  Nichols finally contends that there was no support in the record for the court's finding that Tetreault experienced fear prior to her murder.  In fact, the record provides ample support for that finding based on (1) the account of the couple's older son, who described hearing his mother scream before being killed; and (2) the couple's history of domestic violence and Nichols's increasingly volatile conduct toward Tetreault in the week prior to her murder, which caused

her to consider committing him involuntarily and to sleep at work or in her son's room.

[¶31] In sum, because the court appropriately considered objective, factually reliable information in placing Nichols's conduct along a continuum of seriousness, there was no misapplication of principle.

## III. CONCLUSION

[¶32] We conclude that the sentencing court did not misapply sentencing principles in imposing Nichols's basic sentence and that the basic term was not an abuse of the court's sentencing power. Indeed, we commend the court for conducting a sentencing proceeding that was exemplary in conforming to the analytical steps prescribed by statute, and demonstrating thoughtful consideration of the information that was presented by the parties.

The entry is:

Sentence affirmed.

_____

**On the briefs:**

Adam P. Sherman, Esq., Paradie, Sherman & Worden, P.A., Lewiston, for appellant Brian Nichols

Janet T. Mills, Attorney General, and Lauren F. LaRochelle, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Adam P. Sherman, Esq., for appellant Brian Nichols

Lauren F. LaRochelle, Asst. Atty. Gen., for appellee State of Maine

Androscoggin County Superior Court docket number CR-2010-446
FOR CLERK REFERENCE ONLY