MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 39
Docket:      SRP-20-307
Argued:      June 3, 2021
Decided:     July 22, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

DUSTAN J. BENTLEY

HORTON, J.

[¶1] Dustan J. Bentley appeals from a sentence of forty years of imprisonment entered by the trial court (York County, *Douglas, J.*) after Bentley's guilty plea to murder, 17-A M.R.S. § 201(1)(A) (2021). Because Bentley has not identified any misapplication of principle or abuse of discretion in either the court's sentencing analysis or its exercise of its sentencing power, we affirm the sentence.

## I. BACKGROUND

A.    Facts

[¶2] The following undisputed facts are drawn from the State's summary of the evidence that it would have presented had the matter proceeded to trial. *See* M.R.U. Crim. P. 11(b)(3), (e); *State v. Lord*, 2019 ME 82, ¶ 3, 208 A.3d 781.

[¶3]   On March 18, 2019, at approximately 10:30 p.m., several Old Orchard Beach police officers were dispatched to the home shared by Bentley, age thirty, and the victim, age sixty-five.  The dispatch was in response to a call from Bentley's mother, who claimed that Bentley had called her roughly forty-five minutes earlier and told her that he had stabbed his roommate to death.  Upon arriving at the apartment building, one officer saw a car backed up to the door of Bentley's apartment with its trunk door open and the trunk lined with a shower curtain.  The officers found Bentley in the doorway of the apartment with one end of a ratchet strap tied around him.  The other end of the strap was tied around the victim's body.

[¶4] According to an autopsy conducted the next day, the victim suffered twenty-five to thirty sharp knife wounds.  The medical examiner also found evidence of blunt force trauma to the victim's head, neck, and torso.  The victim suffered breaks or fractures to his nose, neck bone, hyoid bone, sternum, several ribs, and fingers on both hands.  In addition, the medical examiner found hemorrhaging in the front of the victim's neck caused by a USB cord that Bentley used to strangle the victim.  The medical examiner determined that the death was caused by the multiple blunt force traumas, the stab wounds, and strangulation.

B.     Procedural History

[¶5]   A grand jury indicted Bentley on one count of intentional or knowing murder in violation of 17-A M.R.S. § 201(1)(A).  The court held a hearing pursuant to M.R.U. Crim. P. 11 at which Bentley pleaded guilty to the charge.  Following its offer of proof, the State informed the court that, in exchange for Bentley's guilty plea, the State would recommend a sentence between the statutory minimum of twenty-five years and a cap of forty years of imprisonment.  The court accepted the plea and found Bentley guilty of intentional or knowing murder.

[¶6]   At Bentley's sentencing hearing, the State recommended a basic sentence of fifty years with the final sentence of forty years in accordance with the cap agreed upon by the parties in the plea.  Bentley requested that the court set a basic sentence of twenty-five years and a final sentence of twenty-eight years.  Following both parties' presentations, the court made oral findings regarding Bentley's commission of the offense.  The court also stated that it was "supposed to consider in setting a basic sentence other comparable cases."

[¶7]  The court cited as guides three different murder cases, all of which involved sentences entered after trials.  Based on its findings and the comparable cases, the court set the basic sentence at fifty to fifty-five years of

imprisonment. The court then weighed the aggravating and mitigating factors specific to the circumstances of the case. It concluded that the mitigating factors—in particular, that Bentley took responsibility for his actions by pleading guilty—outweighed the aggravating factors and therefore supported a sentence shorter than the basic sentence. The court set the final sentence at forty years of imprisonment.

[¶8] Bentley filed an application for leave to appeal the sentence. *See* 15 M.R.S. § 2151 (2021); M.R. App. P. 20. The Sentence Review Panel granted Bentley's request. *See* M.R. App. P. 20(g); *State v. Bentley*, No. SRP-20-307 (Me. Sent. Rev. Panel Dec. 22, 2020).

## II. DISCUSSION

[¶9] Bentley argues that the trial court erred by considering sentences imposed in comparable cases in imposing a sentence of forty years of imprisonment. Specifically, he cites to *State v. Diana*, 2014 ME 45, 89 A.3d 132, for the proposition that the court denied Bentley "an individualized sentence" by relying on comparable cases to determine an appropriate sentence.

A.     Sentencing Procedure

[¶10]  In a murder case, the sentencing court employs a two-step process. 17-A M.R.S. § 1252-C (2018);[1] *State v. Gaston*, 2021 ME 25, ¶ 33, 250 A.3d 137. In the first step, "the court determines the basic term of imprisonment based on an objective consideration of the particular nature and seriousness of the crime." *Gaston*, 2021 ME 25, ¶ 33, 250 A.3d 137 (quotation marks omitted).  In the second step, "the court determines the maximum period of incarceration based on all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case, including the character of the offender and the offender's criminal history, the effect of the offense on the victim[,] and the protection of the public interest." *Id.* (quotation marks omitted).  We review the determination of the basic sentence (1) de novo for misapplication of legal principles, 15 M.R.S. § 2155 (2021); *State v. Hayden*, 2014 ME 31, ¶ 17, 86 A.3d 1221, and (2) for "an abuse of the court's sentencing power," *State v. Nichols*, 2013 ME 71, ¶ 13, 72 A.3d 503.

[¶11]  The Legislature has articulated the goals of sentencing, which are, in part, to create consistency among sentences for similar offenses while

---

[1]  Title 17-A M.R.S. § 1252-C (2018) has since been repealed and replaced, but both versions of the sentencing statute set out the same steps. P.L. 2019, ch. 113, §§ A-1, A-2 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1602 (2021)).

6

encouraging individualization of each sentence based on circumstances specific to the case and the defendant. *See* 17-A M.R.S. § 1151(5), (6) (2018).[2] The steps in the sentencing process guide the court in furthering both the goal of systemic consistency in sentencing and the goal of imposing a sentence that considers the defendant as an individual human being. *See* 17-A § 1602(1), (2); *Nichols*, 2013 ME 71, ¶ 14, 72 A.3d 503. Recognizing the challenge a court faces in reconciling these disparate sentencing goals, we afford the court significant leeway in what factors it may consider and the weight any given factor is due when determining a sentence. *See State v. Hamel*, 2013 ME 16, ¶ 8, 60 A.3d 783 ("[T]he selection for appropriate emphasis among the[] disparate purposes [of sentencing goals] rests in the discretion of the court." (quotation marks omitted)).

B.    Consideration of Comparable Cases

[¶12]  Bentley bases his claim of legal error on the court's statement that it "is supposed to consider in setting a basic sentence other comparable cases." He argues that reliance on comparable cases constitutes a misreading of case law, *see Diana*, 2014 ME 45, ¶ 41, 89 A.3d 132, and that the facts of the cases on

---

2  Title 17-A M.R.S. § 1151 (2018) has also been repealed and replaced. *See* P.L. 2019, ch. 113, § A-1, (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1501 (2021). Both versions of the statute set out the same sentencing goals.

which the court relied in determining the basic sentence were so different from the facts here that he was denied an individualized sentence. He points out that all of those cases involved sentences imposed following convictions entered after trials.

[¶13] Bentley's first argument is based on a misinterpretation of our precedent regarding the use of comparable cases at sentencing. "[I]t is *permissible* for the sentencing court to consider comparable sentences at the first step if appropriate, [although] neither the statute nor our case law mandate it." *Nichols*, 2013 ME 71, ¶ 20, 72 A.3d 503 (emphasis added). Indeed, trial courts have "wide discretion in determining the sources and types of information to consider when imposing a sentence." *Reese*, 2010 ME 30, ¶ 28, 991 A.2d 806. Relying on comparable cases is undoubtedly consistent with our precedent and the goals of sentencing laid out by the Legislature. *See id.*; 17-A M.R.S. § 1501.

[¶14] Contrary to Bentley's assertions, the court's statement that it was "supposed to consider" comparable cases does not in itself justify vacating the sentence, in light of the permissive nature of our instructions for trial courts in *Diana*, 2014 ME 45, ¶ 41, 89 A.3d 132, and in *Nichols*, 2013 ME 71, ¶ 20, 72 A.3d 503. Although the court was not required to consider comparable

cases, *see Diana*, 2014 ME 45, ¶ 41, 89 A.3d 132, the court correctly applied sentencing principles at both steps of the sentencing analysis. The court carefully considered both objective and subjective factors and imposed a sentence consistent with the cap agreed upon by the parties in the plea agreement. *See Gaston*, 2021 ME 25, ¶ 33, 250 A.3d 137.

[¶15] Bentley's argument that the court should not have relied in the first step of the sentencing analysis upon cases where sentences were imposed after a trial is unconvincing. The court began the first step of the analysis by discussing the details specific to this murder that spoke to its "nature and seriousness." *Id.* (quotation marks omitted). Those details included the "significant disparity in height, age, weight and physical vitality between the victim and [Bentley]"; the "savage" nature of Bentley's attack on the victim; and Bentley's attempt to conceal the crime from the police. It was only after considering these specific factors that the court discussed comparable cases. This discussion is not evidence that the court deprived Bentley of an individualized sentence. Rather, the purpose of the court's analysis was to place Bentley's crime, as it was committed, at a point on the "continuum for the type of criminal conduct involved." *See State v. Schofield*, 2006 ME 101, ¶ 9, 904 A.2d 409 (quotation marks omitted).

[¶16]   The first step in sentencing emphasizes the goal of consistency more than the second step, which focuses on individualization of the sentence, based on, among other factors, the defendant's unique life history and the impact of the crime on the victim.  *See id.* ¶¶ 9, 13.  It follows that, at the first step, a sentencing court may consider comparable cases when engaging in an objective consideration of the "nature and seriousness" of the crime for which the sentence is being imposed.  *Nichols*, 2013 ME 71, ¶¶ 12, 14, 20, 72 A.3d 503 (quotation marks omitted).  The purpose of the comparison is to assign the crime a basic sentence considering the range of sentences that have been imposed in cases involving similar crimes committed under similar circumstances.  *See* 17-A M.R.S. § 1602(1)(A).  Although the comparison may take into account whether a comparable sentence resulted from a plea or a trial, that the comparable sentences were imposed after trial did not preclude the court from considering them in determining a basic sentence for Bentley's crime within the sentencing range for murder of twenty-five years to life in prison.

[¶17]  At the second step of the sentencing process, the court weighed the individualized aggravating and mitigating factors in detail when it determined the maximum sentence.  *See Schofield*, 2006 ME 101, ¶ 13, 904 A.2d 409.  In fact,

the court imposed a sentence shorter than its basic sentence based on its review of Bentley's background and choice to plead guilty rather than subject the victim's family to a trial. Bentley's argument that he was denied an individualized sentence is simply not reflected anywhere in the record. At no point did the court depart from sentencing principles or abuse its discretion in coming to or issuing its sentence. *See Diana*, 2014 ME 45, ¶ 37, 89 A.3d 132.

The entry is:

Sentence affirmed.

---

Joseph Mekonis, Esq. (orally), Law Office of Joseph Mekonis, P.A., Saco, for appellant Dustan J. Bentley

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine