MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 142
Docket:      Pen-20-48
Argued:      November 18, 2020
Decided:     December 22, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

JOHN DE ST. CROIX

GORMAN, J.

[¶1]  In March of 2018, John De St. Croix locked two people into the cargo area of a box truck and then set the truck on fire.  Both of the people locked inside the truck died.  In March of 2019, a jury found De St. Croix guilty of one count of intentional, knowing, or depraved indifference murder, 17-A M.R.S. § 201(1)(A), (B) (2020); one count of depraved indifference murder, 17-A M.R.S. § 201(1)(B); and one count of arson (Class A), 17-A M.R.S. § 802(1)(A) (2020), for those actions.  Almost a year later, the trial court (Penobscot County, *A. Murray, J.*) sentenced De St. Croix to two life terms for the murders and a concurrent thirty-year sentence for the arson.  De St. Croix appeals from the judgment and the sentences, and we affirm both.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Gatto*, 2020 ME 61, ¶ 16, 232 A.3d 228.  On March 28, 2018, De St. Croix locked Michael Bridges and Desiree York in the cargo area of a box truck, gathered camping fuel and cardboard, and started a fire under the truck. For twelve minutes, as the fire engulfed the truck, De St. Croix stood watching, listening to Bridges and York screaming for help and banging on the inside of the truck walls; only then did De St. Croix call 9-1-1.  Bridges and York died as a result of smoke inhalation and thermal injuries from the fire.

[¶3]  De St. Croix was indicted for intentional or knowing murder or depraved indifference murder, 17-A M.R.S. § 201(1)(A), (B), for the killing of Bridges; depraved indifference murder, 17-A M.R.S. § 201(1)(B), for the killing of York; and arson (Class A), 17-A M.R.S. § 802(1)(A).[1]  He pleaded not guilty to the charges.

[¶4]  After a four-day trial, a jury found De St. Croix guilty of all three counts.  The court sentenced De St. Croix to life in prison for each of the murders

---

[1]  De St. Croix was also charged with two counts of felony murder (Class A), 17-A M.R.S. § 202(1) (2020); those counts were eventually dismissed.

and to a concurrent thirty years in prison for arson. The court also ordered De St. Croix to pay $2,294.46 in restitution. De St. Croix's timely appeal from his conviction is based solely on his contention that the court erred by refusing to excuse for cause a potential juror. *See* 15 M.R.S. § 2115 (2020); M.R. App. P. 2B(b)(1). We are not persuaded by that argument, and we do not address it further. *See State v. Carey*, 2019 ME 131, ¶¶ 14-15, 214 A.3d 488; *State v. Diana*, 2014 ME 45, ¶ 22, 89 A.3d 132; *State v. Rollins*, 2008 ME 189, ¶¶ 11-13, 961 A.2d 546; M.R.U. Crim. P. 24(b). The Sentence Review Panel granted De St. Croix's application for review of his sentence, *see* 15 M.R.S. §§ 2151-2153 (2020); M.R. App. P. 20, and we address his challenge to his sentence below. *State v. De St. Croix*, No. SRP-20-49 (Me. Sent. Rev. Panel Mar. 13, 2020).

## II. DISCUSSION

[¶5] A court crafting a murder sentence must complete two steps. 17-A M.R.S. § 1252-C (2018);[2] *State v. Sweeney*, 2019 ME 164, ¶ 17 & n.5, 221 A.3d 130. "First, the court determines the basic term of imprisonment based on an objective consideration of the particular nature and seriousness of the crime." *Sweeney*, 2019 ME 164, ¶ 17, 221 A.3d 130 (quotation marks

---

[2] Title 17-A M.R.S. § 1252-C (2018) has since been repealed and replaced, but both versions of the sentencing statute set out the same steps. P.L. 2019, ch. 113, §§ A-1, A-2 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1602 (2020)).

omitted); *see* 17-A M.R.S. § 1252-C(1). Second, the court determines the maximum period of incarceration based on "all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case, [including] the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest." 17-A M.R.S. § 1252-C(2); *see Sweeney*, 2019 ME 164, ¶ 17, 221 A.3d 130. We review the court's basic sentence de novo for a misapplication of legal principles, and we review its final maximum sentence for an abuse of discretion. *Sweeney*, 2019 ME 164, ¶ 17, 221 A.3d 130.

[¶6] "A person convicted of the crime of murder must be sentenced to imprisonment for life or for any term of years that is not less than 25." 17-A M.R.S. § 1251(1) (2018).[3] As we held more than thirty years ago, however, "[t]he imposition of a life sentence has such a serious impact on the offender so different from the impact of a sentence for a term of years that a life sentence is never justified unless the murder is accompanied by aggravating circumstances." *State v. Shortsleeves*, 580 A.2d 145, 149 (Me. 1990) (alteration

---

[3] Title 17-A M.R.S. § 1251 (2018) has since been repealed and replaced, but the new sentencing statute contains the same requirements. P.L. 2019, ch. 113, §§ A-1, A-2 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1603 (2020)); *see State v. Hardy*, 489 A.2d 508, 512 (Me. 1985) (holding that "the wrongdoer must be punished pursuant to the law in effect at the time of the offense" rather than at the time of sentencing).

omitted) (quotation marks omitted). Those aggravating circumstances include, but are not limited to, matters involving premeditation-in-fact; multiple deaths; murder by a person who has already been convicted of a homicide or any other crime involving the use of deadly force against a person; murder accompanied by torture, sexual abuse, or extreme cruelty; murder committed by an inmate in a penal institution; murder of a law enforcement officer who is performing his or her duties; and murder of a hostage. *Id.* at 149-50; *State v. Waterman*, 2010 ME 45, ¶ 44 & n.5, 995 A.2d 243 ("The *Shortsleeves* list is neither exhaustive nor all-inclusive."); *State v. Koehler*, 2012 ME 93, ¶ 34, 46 A.3d 1134. The factors set out in *Shortsleeves* provide "guidelines to assist [trial courts] in placing murderous behavior along a continuum." *State v. Wilson*, 669 A.2d 766, 768 (Me. 1996).

[¶7]  Here, the court set De St. Croix's basic sentence for both murders at life imprisonment based on the application of two of the aggravating circumstances named in *Shortsleeves*: premeditation-in-fact and extreme cruelty.  De St. Croix challenges both.[4]

---

[4]  De St. Croix makes no argument regarding his thirty-year sentence for arson.

A. Premeditation-in-Fact

[¶8]   De St. Croix argues that the court erred by applying the premeditation-in-fact aggravating circumstance because (1) premeditation requires more time and planning than occurred here and (2) premeditation cannot be applied as to depraved indifference murder because that crime has no state-of-mind element.  Neither argument is persuasive.

[¶9]  When a court determines that a murder was a "planned, deliberate killing," that court's use of premeditation as an aggravating circumstance is appropriate.  *Shortsleeves*, 580 A.2d at 149 (quotation marks omitted) (naming a "killing for hire" as one example of a premeditated killing (quotation marks omitted)); *accord State v. Cookson*, 2003 ME 136, ¶ 40, 837 A.2d 101.  Contrary to De St. Croix's suggestion, we have never stated that premeditation-in-fact is satisfied only by a particular type or duration of planning.  Rather, application of the premeditation aggravating circumstance to justify a life sentence has been upheld in a variety of situations.  *See, e.g.*, *Waterman*, 2010 ME 45, ¶¶ 11, 25, 45, 995 A.2d 243 (the defendant's angry phone conversation concerning one of the victims a few hours before he killed them); *State v. Nichols*, 2013 ME 71, ¶¶ 4, 28, 32, 72 A.3d 503 (a reference to killing the victim in the days leading up to the murder); *Koehler*, 2012 ME 93, ¶¶ 4-5, 26, 36, 38, 46 A.3d 1134

(a stabbing motion and comments the defendant made regarding the victim the night before he stabbed her to death); *State v. Dwyer*, 2009 ME 127, ¶¶ 2-4, 38, 985 A.2d 469 (the steps the defendant took to set up a meeting with the victim on the day of the murder); *State v. Holland*, 2012 ME 2, ¶¶ 5, 39, 43, 34 A.3d 1130 (the defendant's actions, on numerous occasions in the month before the murder, of walking past the victim's home and patting his side to suggest that he was armed); *State v. Hayden*, 2014 ME 31, ¶¶ 9, 11, 19, 86 A.3d 1221 (statements the defendant made the day before the murders that he was going to kill the victims and the defendant's efforts to obtain ammunition on that same day); *Cookson*, 2003 ME 136, ¶¶ 39-40, 44, 837 A.2d 101 (the defendant's efforts in the few days before the murders to arrange for use of another vehicle and for an alibi).

[¶10] Although De St. Croix attempts to characterize his actions as based on a "momentary type of premeditation, if any at all," that characterization simply does not comport with the court's actual findings. Rather, the court deemed De St. Croix's actions "goal-directed behavior" that "did not occur in the snap of the fingers." The court noted that De St. Croix "took steps to lock the people in and then took . . . about a half hour to gather the materials and to put them in a position underneath the truck to start the fire and feed the fire . . . ,

8

knowing that when the vehicle was locked that there was at least one person definitely in there, and certainly an awareness that [York] was not outside the truck at the time that happened."

[¶11]    Further, although De St. Croix would have us declare that a determination of premeditation-in-fact is tantamount to a finding that he acted intentionally in murdering York as well as Bridges, premeditation for purposes of sentencing is legally distinct from intent for purposes of finding guilt of the underlying crime.[5]  *See Shortsleeves*, 580 A.2d at 149 ("By the use of the words 'in-fact,' we mean to differentiate the premeditation to which we refer from the legal fiction of premeditation recognized in some states in which the premeditation exists for only an instant of time before the actual killing." (quotation marks omitted)).  An intentional act is committed when "it is the

---

[5] Intentional or knowing murder is committed when the defendant "[i]ntentionally or knowingly causes the death of another human being."  17-A M.R.S. § 201(1)(A) (2020).  Depraved indifference murder is committed when the defendant "[e]ngages in conduct that manifests a depraved indifference to the value of human life and that in fact causes the death of another human being." 17-A M.R.S. § 201(1)(B) (2020); *see State v. Cummings*, 2017 ME 143, ¶ 21, 166 A.3d 996 (stating that intentional or knowing murder and depraved indifference murder may be charged as alternatives in a single count, and "a unanimous verdict can be reached even if individual jurors disagree about whether the murder was an intentional or knowing murder or a depraved indifference murder, as long as the evidence presented to the jury is sufficient to support each of the alternative theories" (citation omitted)).  Although intent is not a required element of depraved indifference murder, that does not mean that depraved indifference murder *cannot* be committed with intent, only that the State may be unable to prove such intent.  *See Cummings*, 2017 ME 143, ¶ 20, 166 A.3d 996 ("Because direct evidence of a defendant's intent or knowledge can be difficult to obtain, the State may charge depraved indifference murder as an alternative to intentional or knowing murder, in a single count, in cases where the defendant's intent is not known when the defendant is charged.").

person's conscious object to cause [a particular] result," 17-A M.R.S. § 35 (2020), and only the fact-finder (here, the jury) can determine, beyond a reasonable doubt, whether a person acted with such intent for purposes of determining guilt based on evidence admitted in accordance with evidentiary rules, 17-A M.R.S. § 201(1)(A); *State v. Cummings*, 2017 ME 143, ¶ 21, 166 A.3d 996. Premeditation-in-fact, in contrast, is defined by the planning and preparation that goes into some murders, *Shortsleeves*, 580 A.2d at 149-50, and *the sentencing court*—rather than the jury—makes such factual findings for sentencing purposes by a preponderance of the evidence based on whatever information the court deems reliable, *see State v. Hutchinson*, 2009 ME 44, ¶¶ 34-38, 969 A.2d 923; *State v. Witmer*, 2011 ME 7, ¶ 20, 10 A.3d 728 ("Courts have broad discretion in determining what information to consider in sentencing; they are limited only by the due process requirement that such information must be factually reliable and relevant. A sentencing court has discretion to determine the appropriate procedure for ensuring the factual reliability of sentencing information." (alteration omitted) (citation omitted) (quotation marks omitted)).[6]

---

[6] Because the court's finding of premeditation-in-fact in sentencing is unrelated to the jury's finding of intent in determining guilt as to the underlying crime, we disagree with De St. Croix's contention—referenced only briefly in a footnote of his brief—that the court violated his due process rights by finding the element of intent in contradiction to the jury's finding of guilt that did not

[¶12] In sum, De St. Croix offers no authority to support his proposition that his actions in planning these two murders—locking the victims inside the truck, gathering materials, starting and coaxing the fire, and standing nearby while listening to their screams—cannot constitute premeditation-in-fact as that term is used in *Shortsleeves*. We conclude that the trial court committed no error by applying premeditation-in-fact as an aggravating circumstance to justify imposition of a basic sentence of life in prison for both counts of murder. *See Shortsleeves*, 580 A.2d at 149-50.

B.      Extreme Cruelty

[¶13]   A court may impose a life sentence upon a finding that the defendant committed the murder "accompanied by torture, sexual abuse or other extreme cruelty inflicted upon the victim." *Id.* at 150 (quotation marks omitted). "Imposition of a life sentence on the basis of extreme cruelty alone will require a showing that the viciousness of the murder differed in a substantial degree from that which inheres in the crime of murder." *State v. St. Pierre*, 584 A.2d 618, 621 (Me. 1990). De St. Croix essentially argues that his

---

necessarily include a finding of intent. *See Libby v. State*, 2007 ME 80, ¶ 6 n.9, 926 A.2d 724 ("[W]hen a trial judge exercises [his or her] discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." (quotation marks omitted)); *see also State v. Jandreau*, 2017 ME 44, ¶ 14, 157 A.3d 239 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration omitted) (quotation marks omitted)).

crime was not vicious enough to qualify for application of the extreme cruelty aggravating circumstance.[7]

[¶14] Here, the court found extreme cruelty based on De St. Croix having "lock[ed] the box truck absolutely knowing there's somebody inside, setting it afire, and listening as two people are screaming, with no reconsideration of the action before these people died, absolutely . . . no effort to stop this . . . . They didn't die immediately . . . ." The court concluded, "I do find that these acts substantially exceed the degree of viciousness inherent in the crime of murder."

[¶15] Contrary to De St. Croix's contention, his actions—as analyzed by the court in sentencing—are not appreciably less vicious than those in other matters in which we have upheld the application of the extreme cruelty aggravating circumstance to justify a life sentence.[8] *See, e.g.*, *Hutchinson*, 2009 ME 44, ¶¶ 13, 40-43, 969 A.2d 923 (in addition to executing a fatal chest wound and a sexual assault, the defendant stabbed the victim's face over fifty

---

[7] The presence of one aggravating circumstance alone is a sufficient basis to impose a life sentence. *State v. Waterman*, 2010 ME 45, ¶ 44, 995 A.2d 243. Although we need not consider extreme cruelty given our agreement with the application of the premeditation-in-fact aggravating circumstance, we do so for the sake of completeness.

[8] De St. Croix's reliance on other cases involving a death in the context of an arson is also misplaced. Neither *State v. Smith*, 675 A.2d 93 (Me. 1996), nor *State v. Joy*, 452 A.2d 408 (Me. 1982), involved a challenge to the sentence imposed. Both cases are also easily distinguished in that, although the victims died as the result of fires set by the defendants, none of the victims in *Smith* or *Joy* was locked inside a small space with no means of escape while the defendant stood outside that space listening to their pleas for help as they died. *Smith*, 675 A.2d at 95-96; *Joy*, 452 A.2d at 410.

times with sufficient force that the knife tip broke off in her head); *Cookson*, 2003 ME 136, ¶¶ 2, 39, 44, 837 A.2d 101 (although each victim died from a single gunshot wound to the head, the defendant showed the adult victim the gun, and she was therefore aware that she was going to die at his hands and also would have feared for the other victim, the twenty-one-month-old child that she was babysitting); *Wilson*, 669 A.2d at 769 (the victim was bound and gagged by tape and asphyxiated with a choker chain, sexually assaulted, and conscious for some portion of the time that she was subjected to the attack); *Hayden*, 2014 ME 31, ¶¶ 5-6, 19, 86 A.3d 1221 (the defendant shot both the mother of his children and a family friend in front of the children).

[¶16]  We conclude that, through its careful analysis of the aggravating circumstances of premeditation-in-fact and extreme cruelty, the trial court precisely complied with the legal principles that apply to setting the basic sentence.  *See Shortsleeves*, 580 A.2d at 149-50; *Nichols*, 2013 ME 71, ¶ 13, 72 A.3d 503 ("A basic sentence will survive appellate scrutiny unless it appears to err in principle." (alteration omitted) (quotation marks omitted)).  Contrary to De St. Croix's additional contention, we also discern no error in the court's determination and weighing of the applicable aggravating and mitigating factors in the second step of its sentencing analysis.  *See State v. Schofield*,

2006 ME 101, ¶ 15, 904 A.2d 409 (refusing to disturb the sentence on the defendant's argument that the court did not assign sufficient weight to her lack of criminal record as a mitigating factor); *Shortsleeves*, 580 A.2d at 150-51 (declining to disturb the court's determination that the applicable mitigating factors did not require a reduction in the basic sentence); *see also Waterman*, 2010 ME 45, ¶ 48, 995 A.2d 243 ("In determining the appropriate degree of mitigation or aggravation of an offender's basic sentence, the court may consider any evidence that is factually reliable and relevant." (alteration omitted) (quotation marks omitted)).

[¶17]   In sum, De St. Croix's sentence reflected the court's thoughtful scrutiny of the particular facts of this case and was imposed through the court's faithful adherence to the two-step murder sentencing process.  We therefore decline to disturb De St. Croix's sentence.

The entry is:

Judgment and sentences affirmed.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for Appellant John De St. Croix

Aaron M. Frey, Attorney General, and Lara Nomani, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2018-1209
FOR CLERK REFERENCE ONLY