MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 37
Docket:      Pen-20-215
Argued:      June 3, 2021
Decided:     July 8, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

F DALY

HUMPHREY, J.

[¶1]   F Daly appeals from a judgment of conviction of knowing or intentional murder, 17-A M.R.S. § 201(1)(A) (2021), entered by the court (Penobscot County, *A. Murray, J.*) after a five-day jury trial, and from the court's imposition of a forty-two-year sentence and denial of his motion for a new trial. Daly argues that the court erred or abused its discretion in excluding alternative-suspect evidence, failing to provide an adequate explanation in setting the basic sentence, and denying his motion for a new trial, which was based on a juror's statements made after the conviction.[1]   We affirm the judgment, the sentence, and the denial of the motion for a new trial.

---

[1]   Daly also contends that the court misstated the burden of proof in its jury instruction regarding the number of witnesses called by each party.   Reviewing the jury instructions in their entirety, we discern no error. *See State v. Plummer*, 2020 ME 106, ¶ 15, 238 A.3d 241.

## I. BACKGROUND

[¶2] Based on the evidence presented at trial, the jury rationally could have found beyond a reasonable doubt, *see State v. Haag*, 2012 ME 94, ¶ 17, 48 A.3d 207, that on January 7, 2018, Daly went to the victim's residence and shot the victim in the abdomen and the head, causing his death. After the police learned of Daly's confession to his girlfriend and discovered Daly's gun hidden in the ceiling of his apartment, Daly was charged by criminal complaint with the victim's murder. Daly was indicted for murder on February 28, 2018.[2] He entered a plea of not guilty.[3]

[¶3] In September 2019, two weeks before the start of the jury trial, the State moved to exclude evidence of alternative suspects, asking that the court hear outside the presence of the jury any proposed testimony regarding an alternative suspect before admitting it in evidence. The court did not rule on the motion in advance of trial. Instead, it ruled on objections to evidence of

---

[2] The indictment initially charged that he had committed the murder "with the use of a firearm against a person," but that language and the citation of the statute governing sentencing for Class A, B, and C crimes committed with use of a firearm were stricken because the use of a firearm is not an element of the crime of knowing or intentional murder and did not affect murder sentencing. *See* 17-A M.R.S. § 201(1)(A) (2021); *see also* 17-A M.R.S. § 1252(5) (2018), *repealed and replaced by* P.L. 2019, ch. 113, §§ A-1, A-2 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1604(5)(A) (2021).

[3] The completed judgment-and-commitment form incorrectly indicates that Daly pleaded guilty. Our mandate orders the correction of this error.

alternative suspects during the trial. Specifically, the court sustained the State's objections to questions asking the victim's girlfriend about an incident in the summer of 2017 involving the victim and another person. Daly argued that he was offering evidence that the other person had stabbed the victim during the 2017 incident in order to challenge the credibility of the testimony of the victim's girlfriend that she had never seen the victim get into fights. He argued that the person who purportedly stabbed the victim was an alternative suspect who had a motive to kill the victim and was in the area at the time of the victim's death. The court ruled that the evidence was not admissible as alternative-suspect evidence and that it did not undermine the credibility of the victim's girlfriend unless there was evidence that she saw the fight that resulted in the stabbing.

[¶4] Before the victim's girlfriend was dismissed as a witness, Daly renewed his objection to the exclusion of evidence of the earlier knife wound the victim had suffered. He represented that the person who had purportedly stabbed the victim had been prosecuted for the stabbing, was to begin serving time for the resulting conviction near the time of the murder, and was in Bangor the weekend of the victim's death with individuals identified as "Truck" and "Capitol" and therefore had the opportunity to murder the victim. The court

4

excluded the evidence, concluding that even if Daly established those facts, there was no reasonable connection between the person who purportedly stabbed the victim and the crime at issue.

[¶5]  On the second day of trial, the State indicated that it had learned that, contrary to Daly's earlier representations, the person who purportedly stabbed the victim in 2017 had not been arrested or charged for that conduct and had had an upcoming court appearance only for an unrelated theft charge. The court reaffirmed its ruling that no alternative-suspect evidence regarding that person would be admitted because it "did not meet the threshold for relevance necessary."

[¶6]  The court also excluded a small portion of an otherwise admitted deposition of Daly's roommate regarding the sale of drugs by the individuals known as Capitol and Truck because there was no reasonable connection between either of them and the crime.  Daly did not offer any additional foundation for the involvement of either of them in the murder.  Daly's girlfriend did, however, later testify that Daly told her that he had visited Truck, shown him the gun, and asked him to call Capitol just before Daly went to the victim's apartment and killed the victim.

[¶7] The State presented evidence of the following to establish its case against Daly:

- The bullets found in the victim's head and in a pillow on his bed were fired from the gun found in the ceiling above the closet in the apartment where Daly resided with his girlfriend and his friend. The gun was in such a location that it appeared it had been pushed through to that area above the ceiling from above the suspended ceiling in the bathroom.

- On the day of the murder, just before 7:30 p.m., Daly called a friend who knew the victim and asked for the victim's address.

- After that phone call, Daly changed into his old glasses, put on two pairs of gloves, and left his apartment.

- When Daly returned a half hour later, he confessed to his girlfriend that he had "clapped" the victim by shooting him in the stomach and then the head. He then cleaned the gun with bleach and water, bagged and hid the gun, and later told his girlfriend that he had tossed his sneakers in a dumpster. He bagged up his clothing. He showered and left the apartment after asking his roommate for different clothes. Days later, he had his roommate take out the trash bag containing his clothing.

- A convenience store's surveillance video from the night of the murder shows that at 6:47 p.m. Daly was wearing one set of clothing, but at 10:00 p.m. he was wearing a different set of clothing.

- A friend of Daly's had previously seen him hide his gun in the closet or the bathroom when a probation officer came to check the apartment.

- Daly had been aware of the bathroom ceiling as a hiding place for items.

- The victim and Daly did not get along, and the victim had hit on a girlfriend of Daly's in the past. During a disagreement with the victim, Daly said to the victim, "I'm not worried about you. I've got something for you."

- After the day of the murder, Daly became paranoid and was not acting like himself. He repeatedly washed and bleached his gun and moved it around the apartment. The gun was rusted when it was found.

[¶8]  After the State presented its case, Daly moved for a judgment of acquittal, and the court denied his motion. Daly called one witness and then rested. The jury found Daly guilty.

[¶9]  After obtaining a presentence investigation report and a psychological evaluation of Daly, the court held a sentencing hearing on July 16, 2020. The court first determined the basic sentence based on the nature and seriousness of the crime as committed. *See State v. Carrillo*, 2021 ME 18, ¶ 38, 248 A.3d 193. The court found that the nature and seriousness of the crime did not justify a life sentence. The court determined that a basic sentence of forty to fifty years was appropriate because Daly made hurried calls to determine where the victim lived and then quickly went to the victim's home, with some planning, and shot him for reasons unknown, but the facts were not as heinous as in other cases, such as when a person was stabbed fifty times in the face, a child was sexually abused and killed, a child was burned to death in a hot oven, and people were burned to death in the back of a locked box truck.[4]

---

[4] *See State v. Hutchinson*, 2009 ME 44, ¶¶ 13, 41, 969 A.2d 923 (affirming basic sentence of life when the victim, in addition to the fatal injury, was stabbed fifty times in the face and was sexually assaulted); *State v. Wilson*, 669 A.2d 766, 767-69 (Me. 1996) (affirming basic sentence of life when the defendant had bound, gagged, sexually assaulted, and killed his eleven-year-old daughter);

[¶10]  The court then considered aggravating and mitigating factors to determine the final sentence.  *See id.*  As aggravating factors, the court found that the victim's family was suffering, that Daly lacked remorse when speaking of the crime to his girlfriend, and that Daly was "rigid, highly controlled, and quite adept at providing a very limited scope of information about himself," which did "not bode well for the rehabilitative purpose of sentencing."  The court found mitigating factors that included the lack of any significant criminal history for Daly and his untreated trauma issues.  The court determined that the weight of the aggravating factors was "substantially similar" to the weight of the mitigating factors.  The court sentenced Daly to serve forty-two years in prison and pay $4,650 in restitution.

[¶11]  Daly timely appealed from the judgment of conviction. *See* 15 M.R.S. § 2115 (2021); M.R. App. P. 2B(b)(1).  He also applied for review of his sentence.  *See* 15 M.R.S. § 2151 (2021).  The Sentence Review Panel granted Daly leave to appeal his sentence.

---

*State v. Lane*, 532 A.2d 144, 145-46 (Me. 1987) (affirming a judgment of conviction of murder when the defendant trapped a child in an oven and set the oven at a high heat causing severe burning and death); *State v. De St. Croix*, 2020 ME 142, ¶¶ 1-2, 16, 243 A.3d 880 (affirming a sentence of life when the victims were locked in a box truck that the defendant set on fire).

[¶12]    While this appeal and the sentence review were pending, in November 2020, Daly moved for a new trial on the ground of newly discovered evidence that one of the jurors had contacted defense counsel to say that three of the jurors had hesitated to find Daly guilty because they were not initially convinced that Daly had not gone to the apartment of Truck and Capitol to give one or both of them his gun before the victim was shot.[5]  *See* M.R.U. Crim. P. 33. The juror informed counsel that the three jurors had ultimately voted to convict because if Truck or Capitol had caused the victim's death using Daly's gun, "why didn't [Daly]'s attorneys say so?"

[¶13]    Daly argued that this information justified a new trial when considered in light of evidence that Daly told his girlfriend that he had gone to Truck's apartment first and had shown him the gun, asking him to call Capitol before he left for the victim's apartment.  He argued that the juror's statements demonstrated that the exclusion of alternative-suspect evidence affected the fairness of his trial.  After accepting an opposing memorandum and a reply memorandum, the court denied the motion for a new trial based on the lack of any newly discovered evidence and the application of M.R. Evid. 606(b), which provides that a court may not accept a juror's affidavit as to most aspects of

---

[5] We stayed the appeal while the motion for a new trial was pending.

juror deliberations. The court reasoned that, even if it were permissible to consider a juror's affidavit regarding deliberations, the court would deny the motion because a juror's interest in inadmissible evidence does not render the exclusion of that evidence erroneous. Daly timely appealed from the court's ruling on the motion. Upon Daly's motions, we consolidated the appeals, allowed supplemental briefing, and sealed the supplemental appendix containing juror information.

## II. DISCUSSION

### A. Alternative-Suspect Evidence

[¶14] Daly challenges the constitutionality of our test for the admissibility of alternative-suspect evidence and argues in the alternative that, even under the existing test, his proffered alternative-suspect evidence should have been admitted. We address each of his arguments separately.

#### 1. Test for the Admission of Alternative-Suspect Evidence

[¶15] Daly contends that his trial was unfair and violated the state and federal constitutions because the court applied a test for the admission of alternative-suspect evidence that improperly placed a burden of production and proof on him, deprived him of the right to a jury trial on the alternative-suspect issue, violated due process, and deprived him of the right

to present a defense. *See* Me. Const. art. I, §§ 6, 6-A; U.S. Const. amend. VI; U.S. Const. amend. XIV, § 1. Because Daly did not raise to the trial court his contention that our test for the admission of alternative-suspect evidence violated his state and federal constitutional rights, we review this issue for obvious error. *See State v. Proctor*, 2020 ME 107, ¶ 13, 237 A.3d 896.

[¶16] "A criminal defendant is entitled to present evidence in support of the contention that another is responsible for the crime with which he is charged." *State v. Dechaine*, 572 A.2d 130, 134 (Me. 1990). The court should consider the effect of the proffered alternative-suspect evidence as a whole because, as we have held, "[t]he court should allow the defendant wide latitude to present all the evidence relevant to his defense, unhampered by piecemeal rulings on admissibility." *State v. Conlogue*, 474 A.2d 167, 172 (Me. 1984) (quotation marks omitted).

[¶17] A defendant, by presenting such evidence, is arguing "that the State has failed to meet its burden of proving that the defendant was the person who committed the crime." *State v. Fournier*, 2019 ME 28, ¶ 18, 203 A.3d 801. Thus, the proffer of alternative-suspect evidence is "neither an affirmative defense nor a justification defense." *State v. Jaime*, 2015 ME 22, ¶ 31, 111 A.3d 1050.

[¶18] The decision to offer alternative-suspect evidence "*does not alter or shift the burden of proof.*" *Fournier*, 2019 ME 28, ¶ 18, 203 A.3d 801 (emphasis added). Thus, "the burden does not shift to the State to prove that the alternative suspect *did not* commit the crime," and "the defendant does not have any burden to prove, by a preponderance of the evidence or otherwise, that the alternative suspect *did* commit the crime." *Jaime*, 2015 ME 22, ¶ 32, 111 A.3d 1050. "As in all criminal cases, the State's burden remains the same throughout the trial—to prove beyond a reasonable doubt all elements of the crime charged, including that the defendant committed the crime." *Id.*

[¶19] We have stated that alternative-suspect evidence is admissible if "(1) the proffered evidence is otherwise admissible, and (2) the admissible evidence is of sufficient probative value to raise a reasonable doubt as to the defendant's culpability by establishing a reasonable connection between the alternative suspect and the crime." *Id.* ¶ 34 (quotation marks omitted).

[¶20] The first part of the test calls for a court to determine the "preliminary admissibility of the evidence" before assessing relevance and the balancing required by M.R. Evid. 401 to 403. *See Jaime*, 2015 ME 22, ¶ 34, 111 A.3d 1050. Thus, the court need not reach the next step if, for example, the proffered evidence is inadmissible hearsay, *see State v. Reese*, 2005 ME 87,

12

¶¶ 11, 13, 877 A.2d 1090; *Dechaine*, 572 A.2d at 133 n.6; *State v. Caulk*, 543 A.2d 1366, 1371 (Me. 1988), or evidence of a prior bad act offered to prove a person's character for the purpose of showing that "on a particular occasion the person acted in accordance with the character," M.R. Evid. 404(b), *see State v. Bridges*, 2003 ME 103, ¶¶ 38, 42, 829 A.2d 247.[6]  In the absence of *admissible* evidence that the defendant is prepared to offer, "a defendant cannot be allowed to use his trial to conduct an investigation that he hopes will convert what amounts to speculation into a connection between the other person and the crime."  *Fournier*, 2019 ME 28, ¶ 18, 203 A.3d 801 (quotation marks omitted).

[¶21]  The second part of the test amounts to a "specific application" of "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006); *see* M.R. Evid. 401-403; *Fournier*, 2019 ME 28, ¶ 18, 203 A.3d 801; *State v. Boobar*, 637 A.2d 1162, 1172

---

[6]  We first summarized the test as having two parts, with the requirement of a preliminary admissibility determination, in *State v. Mitchell*, 2010 ME 73, ¶ 25, 4 A.3d 478.  In support of the test, we cited *State v. Bridges*, 2003 ME 103, ¶ 42, 829 A.2d 247, in which we held that an alternative suspect's prior bad acts, even if they had *some* relevance, were inadmissible evidence offered to show the suspect's character and establish that the suspect acted in conformity with that character.  *Id.* ¶¶ 38-42; *see* M.R. Evid. 404(b).

(Me. 1994); *State v. Mitchell*, 2010 ME 73, ¶ 33, 4 A.3d 478; *State v. Kotsimpulos*, 411 A.2d 79, 81 (Me. 1980). The test for admitting a defendant's alternative-suspect evidence is no different than the test for admitting any other evidence in a criminal trial, whether presented by the defendant or by the State: in addition to being admissible under all of the other Rules of Evidence and other sources of law, the evidence must be relevant to whether the defendant is guilty beyond a reasonable doubt of the offense charged, M.R. Evid. 401-402,[7] and even if the evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," M.R. Evid. 403; *see State v. Wyman*, 2015 ME 2, ¶¶ 21-23, 107 A.3d 1134 (rejecting the defendant's argument that State's evidence of cell phone records should have been excluded under M.R. Evid. 403).

[¶22] The concerns weighing against admissibility under Rule 403—the danger that the issues may be confused, the jury misled, the proceedings unduly

---

[7] "Evidence is relevant if: **(a)** It has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** The fact is of consequence in determining the action." M.R. Evid. 401. Relevant evidence is admissible unless a federal or state statute, another rule of evidence, or another rule applicable in Maine courts provides otherwise. M.R. Evid. 402. "Irrelevant evidence is not admissible." *Id.*

14

delayed, or time wasted—will be considered in every criminal case in which alternative-suspect evidence is being offered. *See* M.R. Evid. 403; *Boobar*, 637 A.2d at 1172 ("The court must take into account the extent to which the alternative perpetrator evidence is in dispute, the time required to present it, and the extent of rebuttal evidence that it would generate, i.e., the extent that it would result in a trial within a trial."). Thus, the focus of a trial court's analysis will ultimately turn to the probative value of the proffered alternative-suspect evidence as compared to those concerns. *See id.*; *see also* Field & Murray, *Maine Evidence* § 401.3 at 100 (6th ed. 2007) (stating that if alternative-suspect evidence "is of little direct probative force, or the inference of another perpetrator speculative, exclusion is likely to be upheld on grounds of lack of relevance under Rules 401 and 403 or as collateral under Rule 403"). For these reasons, a trial court must consider whether otherwise admissible evidence should be excluded because it lacks "sufficient probative value to raise a reasonable doubt as to the defendant's culpability by establishing a reasonable connection between the alternative suspect and the crime." *Jaime*, 2015 ME 22, ¶ 34, 111 A.3d 1050 (quotation marks omitted).

[¶23]  As we have held, the defendant need not "*clearly link[]* the alternative suspect to the crime," and need only proffer evidence that

demonstrates "a reasonable connection between the alternative suspect and the crime."[8] *Id.* (quotation marks omitted). To determine whether the evidence demonstrates a reasonable connection between the alternative suspect and the crime, a trial court must consider whether a fact finder could reasonably view the evidence as creating a reasonable doubt as to the identity of the person who committed the criminal acts at issue. *See id.* If no fact finder could reasonably view the proposed alternative-suspect evidence as sufficient to raise reasonable doubt about guilt, the evidence is merely an invitation to speculation, which would defeat the purposes of Rules 401 to 403.

[¶24] A trial court may therefore exclude evidence that another person had the motive, intent, and opportunity to commit a crime when the proffered evidence "is too speculative or conjectural or too disconnected from the facts of the case against the defendant" to be reasonably connected to the crime. *State v. Le Clair*, 425 A.2d 182, 187 (Me. 1981); *see also State v. Ledger*, 444 A.2d 404,

---

[8] Like the Court of Appeals of New York, we have rejected the ostensibly heightened "clear link" standard for alternative-suspect evidence because it "merely reinforce[s] the notion that remote evidence of a third party's culpability—though relevant—will not be sufficiently probative to outweigh the risk of trial delay, undue prejudice or jury confusion." *People v. Primo*, 753 N.E.2d 164, 168 (N.Y. 2001)*.* Because that standard *"*may be easily misread as suggesting that evidence of third-party culpability occupies a special or exotic category of proof," *id.*, courts in Maine must apply the Maine Rules of Evidence, which require them to consider the "*probative value* [of the evidence] to raise a reasonable doubt as to the defendant's culpability by establishing a reasonable connection between the alternative suspect and the crime." *State v. Cruthirds*, 2014 ME 86, ¶ 22, 96 A.3d 80 (emphasis added and quotation marks omitted); *see* M.R. Evid. 401-403.

416 (Me. 1982) ("[A] defendant may introduce evidence tending to show that another person committed or harbored an intent, motive, and opportunity to commit the crime of which that defendant is charged, if such evidence is not too remote in time or too weak in probative value under M.R. Evid. 403.").

[¶25]  Thus, our two-part test is in fact a shorthand articulation of the application of the Rules of Evidence that, in step two, draws the attention of the trial court to the crux of the decision that it must make in applying Rules 401 to 403 to determine, in its discretion, whether alternative-suspect evidence will be admitted.  We have summarized how to apply the Rules of Evidence in this particular context because, unlike with discrete determinations of admissibility, the alternative-suspect evidence must be considered as a whole to prevent the piecemeal admission of evidence in a way that could waste time, improperly lead to the litigation of factual disputes that are not material to the case, or invite improper speculation or conjecture.  *See Fournier*, 2019 ME 28, ¶ 18, 203 A.3d 801; *Boobar*, 637 A.2d at 1172; *Le Clair*, 425 A.2d at 187.

[¶26]    Daly's argument on appeal that our test imposes an unconstitutional burden of production on a defendant by requiring that alternative-suspect evidence be relevant and admissible under the Rules of

Evidence is tantamount to an argument that jurors should be free to engage in speculation and conjecture. We reject that proposition.

[¶27] The court did not commit obvious error—and therefore did not violate Daly's rights to due process, to present a defense, and to a jury trial—in applying evidentiary rules that place no burden of production or proof on a defendant and keep from a jury evidence that is "too speculative or conjectural or too disconnected from the facts of the case against the defendant," *Le Clair*, 425 A.2d at 187, to make its probative value outweigh the potential that jurors would be misled or confused, or have their time wasted on what could devolve into "a trial within a trial," *Boobar*, 637 A.2d at 1172. *See* M.R. Evid. 401-403.

2. Review of the Court's Exclusion of Alternative-Suspect Evidence

[¶28] Daly contends that the court should have admitted relevant evidence of an alternative suspect, who was affiliated with Capitol and Truck and who had purportedly stabbed the victim the year before the murder, because the offer of proof established a reasonable connection between the suspect and the crime. He also contends that, with the alternative-suspect evidence, he could have argued to the jury that Daly's roommate and girlfriend got the gun and information about the gunshot wounds from Capitol or Truck, with whom they trafficked in drugs, and framed Daly using that information.

[¶29]  We review the court's exclusion of alternative-suspect evidence for clear error or an abuse of discretion, as we do any Rule 401 or 403 determination*.  See State v. Waterman*, 2010 ME 45, ¶¶ 35, 37, 995 A.2d 243; *State v. Hassan*, 2013 ME 98, ¶ 24, 82 A.3d 86.  Because there is no dispute that witnesses could have provided otherwise admissible testimony about the facts proffered by Daly, our analysis is focused on the second part of the test for admitting alternative-suspect evidence—whether Daly's proffered evidence established "a reasonable connection between the alternative suspect and the crime."  *Jaime*, 2015 ME 22, ¶ 34, 111 A.3d 1050 (quotation marks omitted).  That determination is reviewed for an abuse of discretion.  *See Fournier*, 2019 ME 28, ¶ 17, 203 A.3d 801.

[¶30]  We have provided some specific examples of evidence that could establish a reasonable connection between an alternative suspect and the crime: (1) a confession by the alternative suspect, (2) physical evidence linking the suspect to the crime, (3) evidence of mistaken identity, (4) the alternative suspect's motive or opportunity to commit the crime, (5) evidence of the alternative suspect's commission of a similar crime with the same signature features, and (6) the alternative suspect's suspicious behavior following the crime.  *Mitchell*, 2010 ME 73, ¶ 29, 4 A.3d 478.

[¶31]  When we have held that a court erred in excluding alternative suspect evidence, we have done so because a reasonable connection was evident on the face of the record without resort to speculation.  For instance, in *State v. Jaime*, there was evidence that the alternative suspect showed up at a friend's house "on the night of the murder with fist-sized bloodstains on his shirt, seeking help to conceal a violent, bloody, fatal assault," and that the alternative suspect admitted that he was at the scene of the crime on the night of the murder, had occasionally used drugs with the victim, and had accompanied the defendant in scattering the victim's remains in a stream. *Jaime*, 2015 ME 22, ¶ 36, 111 A.3d 1050.

[¶32]  In contrast, in other cases such as *State v. Cruthirds*, 2014 ME 86, 96 A.3d 80, and *State v. Mitchell*, 2010 ME 73, 4 A.3d 478, we affirmed the exclusion of alternative-suspect evidence as insufficiently connected to the crime.  In *Cruthirds*, "the only connection between [the alternative suspect] and the attack on the victim was established in the victim's testimony that (1) he was her baby's father; and (2) he told her in a Facebook message on the evening of the assault that he had come to her door earlier, knocked, and left when no one answered."  2014 ME 86, ¶ 24, 96 A.3d 80.  We contrasted that evidence with the evidence linking the defendant to the crime: "the victim's testimony,

the recording of her 911 call, and the recording of [an eyewitness]'s police interview all explicitly named [the defendant] as the assailant, and DNA evidence corroborated those statements." *Id.* ¶¶ 3, 24; *see also Holmes*, 547 U.S. at 331 (holding that a rule governing alternative-suspect evidence must include consideration of the strength of both the prosecution's evidence against the defendant and the defendant's proffered evidence about the alternative suspect).

[¶33]  In *Mitchell*, there was more evidence than in *Cruthirds* regarding a possible alternative suspect, but we still affirmed the trial court's exclusion of that evidence.  2010 ME 73, ¶ 39, 4 A.3d 478.  There, the State's case against the *defendant* included evidence that (1) the defendant's DNA was recovered from the nails of the victim's right hand; (2) a latent print examiner identified a footprint at the scene that "was of the same size, had the same outsole design, and came from the same manufacturing mold as [the defendant]'s shoe"; (3) the defendant was upset because he thought that he should have inherited the home in which the victim lived; and (4) the defendant drove a car that was olive green with a tan roof and maroon primer paint on the driver's side, consistent with a mail carrier's testimony that she saw a car with a maroon

body and tan top in the victim's driveway on the day of the murder. *Id.* ¶¶ 3-5, 10, 15-17.

[¶34] The defendant proffered otherwise admissible alternative-suspect evidence regarding a neighbor of the victim who (1) also wore a size-ten shoe and had been seen in shoes that looked similar to the defendant's; (2) had a beige jacket with a wool collar and sometimes wore a scarf, similar to the description provided by the mail carrier that a man in the victim's driveway was wearing a tan coat and gray wool scarf; (3) had previously been seen in a suede, camel-colored coat that was not seen again after the murder; (4) had beaten another woman in the past; (5) owned a two-tone green automobile; (6) had met the victim and referred to her as a slut; (7) provided a false alibi and seemed nervous after the murder; (8) had features similar to those depicted in a composite drawing produced with aid from the mail carrier; (9) had previously fought with a girlfriend, who was the victim's best friend, and the victim had taken her friend's side; and (10) could not be ruled out as a source of certain fingerprints. *Id.* ¶¶ 10, 19; *see id.* ¶¶ 36-37.

[¶35] We held that, given the lack of any physical evidence connecting the alternative suspect with the crime, the evidence regarding the alternative suspect "provide[d] only weak proof of motive or propensity, and only

moderately probative evidence of opportunity, mistaken identity, or suspicious post-crime behavior." *Id.* ¶ 38. We held that the evidence "did not rise above the level of speculation and did not establish a reasonable connection between the neighbor and the crime." *Id.* ¶ 38.

[¶36] We also affirmed the exclusion of alternative-suspect evidence and a judgment of conviction when the excluded evidence would have showed only that an alternative suspect was involved in drug dealing with the victim and knew that the victim had been loaned money within two days before the victim was killed, *Waterman*, 2010 ME 45, ¶ 39, 995 A.2d 243, and where the evidence would establish only that the alternative suspect had a "familiarity with the general vicinity in which the body was found, and that there had been a fleeting contact between the alternative perpetrator and the victim on the date of her disappearance," *Boobar*, 637 A.2d at 1172.

[¶37] Here, Daly proffered evidence that (1) a person associated with Truck and Capitol had stabbed the victim in 2017 and (2) the person was about to begin serving time in jail or prison. Evidence was admitted that, on the day of the murder, Truck resided in an apartment that was near the victim's apartment. Daly's girlfriend also testified that Daly told her he had visited Truck before going to the victim's apartment and shooting the victim. Daly did

not proffer evidence that Truck, Capitol, or the person who purportedly stabbed the victim had been in possession of the murder weapon, had been in contact with the victim, or had done or said anything before or after the victim's death that would suggest their involvement in the killing.

[¶38]  In contrast to this attenuated connection between alternative suspects and the crime, there was significant testimonial and physical evidence connecting Daly with the crime, as set forth in detail above. *See supra* ¶ 7. Daly challenged the State's physical evidence primarily by cross-examining its investigator about whether the police had reviewed all video of the comings and goings at his residence between the time of the murder and the date when the gun was discovered. *Cf. Holmes*, 547 U.S. at 322-23, 330-31 (holding that evidence of another person's confession could not be excluded on the basis of the strength of the State's physical evidence when the value of that evidence had been challenged based on theories that the evidence had been contaminated and police were framing the defendant).

[¶39]  Nonetheless, without a proffer of any evidence suggesting that any of the three purported alternative suspects had ever been to the victim's residence, or that any of them had visited Daly's residence following the murder and therefore could have hidden the gun in Daly's apartment, any connection

between those individuals and the crime requires conjecture and speculation. *Cf. State v. Robinson*, 628 A.2d 664, 667 (Me. 1993) (affirming the exclusion of alternative-suspect evidence when, although there was evidence that the alternative suspect may have conveyed to another person a threat against the victim, no admissible evidence was proffered to place the alternative suspect in the area of the victim's home at the time of the crime). The court did not abuse its discretion in excluding the evidence as insufficient to establish a reasonable connection to the crime because the proffered evidence would have been only weakly probative of any other suspect's motive or opportunity to commit the crime. *See Mitchell* 2010 ME 73, ¶ 38, 4 A.3d 478. A fact finder could not, without resorting to speculation, view the evidence as creating a reasonable doubt regarding the identity of the person who murdered the victim. *See Jaime*, 2015 ME 22, ¶ 34, 111 A.3d 1050.

B.    Sentencing

[¶40]  Daly argues that the court's explanation of its reasons for setting the basic period of imprisonment was inadequate and that the matter should be remanded for resentencing.

[¶41]   A person who has committed the crime of murder "must be sentenced to imprisonment for life or for any term of years that is not less than

25." 17-A M.R.S. § 1251(1) (2018).[9]  A court employs a two-step process in sentencing a defendant for murder: "First, the court determines the basic term of imprisonment based on an objective consideration of the particular nature and seriousness of the crime.  Second, the court determines the maximum period of incarceration based on all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case, including the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest." *Carrillo*, 2021 ME 18, ¶ 38, 248 A.3d 193 (quotation marks omitted).

[¶42]  At issue here is the first step of the court's sentencing.  We review the basic sentence set by the court "de novo for a misapplication of legal principles." *Id.* ¶ 41.  In setting the basic sentence in a murder case, the information upon which the sentencing court relies must be factually reliable and relevant to satisfy the requisites of due process. *See id.* ¶ 44.

[¶43]  "Because the extent of a judge's discretion is so broad, and because the difficulty of the task makes it one that warrants precision and focus, the process used by the sentencing court to reach the sentence imposed must be

---

[9]  This sentencing statute has been repealed and replaced without substantive change. *See* P.L. 2019, ch. 113, §§ A-1, A-2 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1603(1) (2021)).

explained to the sentencing court's audience, including the reviewing court." *State v. Stanislaw*, 2011 ME 67, ¶ 15, 21 A.3d 91. "Articulation of the process is . . . the only method that allows for meaningful appellate review of the sentence." *Id.*

[¶44]  Here, the court explained, based on facts that had support in the trial record, its reasons for setting a basic sentence in the range of forty to forty-five years.  The court found that Daly had planned the murder and had shot the victim twice for reasons that may never be known, but the facts were not so severe as to warrant a term of years beyond the range of forty to forty-five years.  The court's articulation of its reasoning was sufficient for purposes of appellate review.

[¶45]  The court did not misapply principle in establishing the basic sentence.  *Cf. State v. Gaston*, 2021 ME 25, ¶ 35, 250 A.3d 137 (affirming a basic sentence of thirty-five years when the murder was "an act of domestic violence that was impulsive rather than premeditated"); *Carrillo*, 2021 ME 18, ¶¶ 41, 44, 148 A.3d 193 (affirming a basic sentence of fifty years when a mother actively participated in months of physical abuse that resulted in the death of her child); *State v. Leng*, 2021 ME 3, ¶ 13, 244 A.3d 238 (affirming a basic sentence of fifty to fifty-five years when the murder was an intentional crime of domestic

violence involving multiple gunshots when the victim's children were in the home and saw their mother's body); *State v. Nichols*, 2013 ME 71, ¶¶ 10, 32, 72 A.3d 503 (affirming a basic sentence of thirty-five to forty years when the defendant committed a premeditated act in shooting his wife while one of the couple's children was in the home); *State v. Dwyer*, 2009 ME 127, ¶¶ 34-36, 985 A.2d 469 (affirming a basic sentence of sixty-five to seventy-five years when the defendant lured a pregnant woman to a location where he bound, robbed, and sexually assaulted her before killing her).  Premeditation-in-fact is an aggravating factor that can justify even a *life* sentence, *see State v. De St. Croix*, 2020 ME 142, ¶¶ 9-12, 243 A.3d 880 (citing cases), and the court did not misapply sentencing principles in setting a basic sentence of forty to forty-five years for Daly, who had planned the shooting.

C.     Motion for a New Trial

[¶46]  Daly argues that the court should have granted his motion for a new trial based on newly discovered evidence regarding the jury's deliberations.  He argues that the rule of evidence pertaining to jury deliberations should not be applied in the context of his motion for a new trial and that the court's ruling violated his rights of due process and was unjust.

[¶47]  When the trial court has denied a defendant's motion for a new trial based on newly discovered evidence, we "review the court's findings of fact for clear error and its determination of whether the defendant has met the necessary elements for an abuse of discretion."  *State v. Peaslee*, 2020 ME 105, ¶ 18, 237 A.3d 861 (quotation marks omitted).  Because of the public interest in maintaining the integrity and finality of judgments, a defendant seeking a new trial based on newly discovered evidence must show, by clear and convincing evidence, that

> (1) the evidence is such as will probably change the result if a new trial is granted;
>
> (2) it has been discovered since the trial;
>
> (3) it could not have been discovered before the trial by the exercise of due diligence;
>
> (4) it is material to the issue; and
>
> (5) it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict.

*Id.* (quotation marks omitted).  Rulings on the admissibility of evidence are reviewed for clear error or abuse of discretion.  *State v. Sargent*, 656 A.2d 1196, 1199 (Me. 1995).

[¶48]  The Maine Rules of Evidence include a provision pertaining to the admissibility of evidence regarding jurors during any "inquiry into the validity

of a verdict or indictment." M.R. Evid. 606(b). Specifically, with exceptions that do not apply here, *see* M.R. Evid. 606(b)(2),[10] a juror may not, as part of such an inquiry, testify about "[a]ny statement made or incident that occurred during the jury's deliberations," the "effect of anything on that juror's or another juror's vote," or "[a]ny juror's mental processes concerning the verdict or indictment." M.R. Evid. 606(b)(1). "The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." M.R. Evid. 606(b)(1).

[¶49] This rule embodies the pre-rules holding of *Patterson v. Rossignol* that a "reluctant juror's statement that she agreed to the verdict through fear and coercion and that the announced unanimous verdict was not her free and deliberate act cannot serve as proper basis for an offer of proof in support of a motion for a new trial."[11] 245 A.2d 852, 856 (Me. 1968); *see State v. Leon*,

---

[10] "A juror may testify about whether: **(A)** Extraneous prejudicial information was improperly brought to the jury's attention; or **(B)** An outside influence was improperly brought to bear on any juror." M.R. Evid. 606(b)(2).

[11] The policy considerations that undergird Rule 606 include

> (1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; and (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

*State v. Leon*, 2018 ME 70, ¶ 8, 186 A.3d 129 (alteration omitted) (quotation marks omitted).

2018 ME 70, ¶¶ 8-9, 186 A.3d 129. "It has been the settled doctrine in this State that affidavits or testimony of jurors will not be received to show any impropriety in the conduct of the jury in the jury room, or an improper mode of arriving at their verdict . . . ." *Patterson*, 245 A.2d at 856.

[¶50] The law governing motions for a new trial based on newly discovered evidence clearly contemplates that evidence of jury deliberations is inadmissible. Newly discovered evidence is that which could have been presented *at trial* if it had been discovered in time, and jury deliberations, which occur *after* the presentation of evidence, are not probative of the elements of the charged crime or crimes. *See Peaslee*, 2020 ME 105, ¶ 18, 237 A.3d 861; *State v. Gatcomb*, 478 A.2d 1129, 1130-31 (Me. 1984).

[¶51] Here, the motion for a new trial called for an inquiry into the validity of the verdict, and the affidavit from counsel in this case presents an offer of proof of precisely the type of juror statement that Rule 606(b)(1) precludes. *See* M.R. Evid. 606(b)(1). The court did not err or abuse its discretion in excluding from consideration "information about [the juror's] own thought process and the interchange among the jurors in the jury room as they considered the evidence." *Leon*, 2018 ME 70, ¶ 12, 186 A.3d 129.

[¶52] Moreover, even if the information contained in counsel's affidavit were admissible, that information does not undermine the fairness of Daly's trial. *See Peaslee*, 2020 ME 105, ¶ 18, 237 A.3d 861 (holding that newly discovered evidence requires a new trial only when the defendant establishes, by clear and convincing evidence, that, among other things, "the evidence is such as will probably change the result if a new trial is granted"). As the court properly instructed, jurors "must not speculate on what other witnesses might have been called or what other evidence might have been presented." *See* Alexander, *Maine Jury Instruction Manual* § 8-4 at 8-8 (2020-2021 ed. 2020). In ruling on the motion for a new trial, the court correctly characterized Daly's argument as suggesting "that any ruling on the admissibility of evidence which might have interested a juror should support a new trial"—an argument at odds with the purposes of the Maine Rules of Evidence. *See Leon*, 2018 ME 70, ¶¶ 8-9, 186 A.3d 129. Because the court did not err or abuse its discretion in excluding the alternative-suspect evidence, it also did not err or abuse its discretion in denying the motion for a new trial, which was based on a juror's interest in that properly excluded evidence.

32

The entry is:

> Judgment affirmed. Remanded for the correction of the judgment-and-commitment form to indicate that Daly pleaded not guilty.

Rory A. McNamara, Esq. (orally), Drake Law, LLC, York, for appellant F Daly

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2018-286
FOR CLERK REFERENCE ONLY